# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

CIVIL ACTION NO. 3:16-CV-00750-JHM

JAMES A. JACKSON                                                                    PLAINTIFF

v.

JULIE SCOTT JERNIGAN, in her
official and individual capacities, et al                                          DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a renewed motion to amend the complaint by Plaintiff

James A. Jackson (DN 57); motions to dismiss by Defendants Louisville/Jefferson County Metro

Government, Louisville Metro Police Department, and Officer Thomas Lawson (DN 23),

Defendants James Crawford and the Commonwealth of Kentucky (DN 25, 26), and Defendants

Julie Scott Jernigan, Lescal Joe Taylor, and Grant County, Kentucky (DN 34); and a motion for a

hearing regarding the motion to amend the complaint by Defendants Jernigan, Taylor, and Grant

County. (DN 62.)  Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

At the outset, the Court notes that the facts surrounding this case are heavily contested by

all parties, and significant disagreements about the background of this case will be noted.  And

while the Court is to only consider the pleadings at this stage of the litigation, some additional

documents the parties have filed will be referenced so as to accurately describe the sequence of

alleged events.

On August 22, 2011, Grant County Circuit Court entered a default judgment against an

individual named James A. Jackson, adjudging him to be the natural father of a child whose

custodian was receiving state assistance and ordering him to pay child support.  (Support Order

[DN 34-2] at 1.) This support order was never challenged, and as of September 9, 2015, an arrearage of $12,043.91 had accumulated. (Grand Jury Referral [DN 34-3] at 1.) Due to this arrearage, the office of Julie Scott Jernigan of the Grant County Attorney Child Support Division faxed a grand jury referral to Commonwealth's Attorney James Crawford, seeking to indict this individual for felony non-support. (*Id.*, Pl.'s Compl. [DN 1] ¶ 21.) An indictment was returned by the grand jury after Jernigan testified as to the basis for the charge. (*Id.* at ¶ 16, Indictment [DN 34-4] at 1.) A warrant was issued for the arrest of a James A. Jackson. (Warrant [DN 34-5] at 1.) The support order, grand jury referral, and indictment all list the same last four digits of a social security number for the individual sought. While it is unclear if this social security number belongs to Plaintiff Jackson, he alleges that he was mistakenly identified at least as to the grand jury referral, indictment, and warrant, as he was not the father of the child for whom support was sought. (Pl.'s Compl. [DN 1] ¶ 3–4.)

Plaintiff Jackson was arrested in Louisville by Louisville Metro Police Department ("LMPD") Officer Thomas Lawson on December 16, 2015. (*Id.* at ¶ 8.) He was taken to Grant County Detention Center on December 29, 2015, where he asserts he remained until he was arraigned on January 27, 2016. (*Id.* at ¶ 24–25.) He was then taken back to the Grant County Detention Center until February 24, 2016, when his bond was reduced to an amount he could post. (*Id.* at ¶ 28.) After securing an agreed order for genetic testing, the results of the test were filed on March 4, 2016, which revealed a zero percent probability that Plaintiff Jackson was the father of the child who was owed support. (*Id.* at ¶ 29.) An order dismissing the charges was entered on March 15, 2016. (*Id.* at ¶ 30.)

Jackson initiated this action on November 29, 2016, making claims against nine defendants.[1]  (*Id.* at ¶ 1–2.)  He asserts claims against three groups of defendants: the "Grant County Defendants," which includes Jernigan of the Grant County Attorney Child Support Division, Grant County Attorney Lescal Joe Taylor, and Grant County; against the "Louisville Defendants," which includes Officer Lawson, LMPD, and the Louisville/Jefferson County Metro Government[2] ("Louisville Metro"); and the "Commonwealth Defendants," which includes Commonwealth's Attorney James Crawford and the Commonwealth of Kentucky ("the Commonwealth").  (*Id.*)  He asserts claims under 42 U.S.C. § 1983 against Jernigan, Taylor, Crawford, and Lawson for violating his constitutional rights (Count I, *id.* at ¶ 34–35), as well as against Grant County, LMPD, Louisville Metro, and the Commonwealth for having policies and customs that deprive individuals, including him, of constitutional rights.  (Counts III, VII, and IX, *id.* at ¶ 38–43, 46–51, 54–59.)  He argues that all defendants are liable for falsely imprisoning him, (Count II, *id.* at ¶ 36–37), and for failing to timely bring him before a judge after his arrest for an initial appearance in violation of Kentucky Rule of Criminal Procedure 3.02.  (Count XII, *id.* at ¶ 64–66.)  He brings a claim for malicious prosecution against Jernigan, Taylor, and Crawford, (Count XI, *id.* at ¶ 62–63), as well as a claim for abuse of process against Jernigan and Taylor.  (Count XIII, *id.* at ¶ 67–68.)  Finally, he argues that Grant County, Louisville Metro, and the Commonwealth are all liable for the torts committed by the named

---

[1] Subsequently, Jackson filed a notice of voluntary dismissal as to his claims against the City of Williamstown, leaving only eight defendants.  (DN 10.)

[2] Jackson has actually brought claims against the "City of Louisville."  Counsel for Louisville Metro indicates that the City of Louisville as a governmenl entity ceased to exist in January 2003 when the city merged with Jefferson County to create one government unit.  (Def.'s Reply to Mot. to Dismiss [DN 23] at 2.)  Therefore, the Court will address this defendant as "Louisville Metro" unless Jackson indicates to the Court that he truly did intend to sue the "City of Louisville."

individuals employed by those government entities under the doctrine of respondeat superior. (Counts VI, VIII, and X, *id.* at ¶ 44–45, 52–53, 61–62.)[3]

All defendants filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (*See* DN 23, 25, 26, 34.) After those motions became ripe but before any decision was rendered, Plaintiff Jackson filed an emergency motion for an injunction. (DN 45.) Jackson sought to enjoin the prosecution of a different individual, James A. Jackson III ("Jackson III"), for felony non-support in Grant County. Jackson III had submitted an affidavit indicating that he was arrested in May 2015 for what he believed was the same child support case as Plaintiff Jackson was arrested for in December 2015, and that he received information while under arrest that the individual being sought was actually a different James A. Jackson from both Plaintiff Jackson and Jackson III. (First Aff. Jackson III [DN 38-2] ¶ 10–13.) After this affidavit was submitted to the Court, Jackson III submitted another affidavit, indicating that he believed Jernigan was bringing non-support charges against him and attempting to have him arrested in retaliation for his involvement in this case, as Plaintiff Jackson had moved the Court to amend his complaint so as to join Jackson III as a plaintiff. (Second Aff. Jackson III [DN 45-3] ¶ 15–19; Pl.'s Mot. to Amend Compl. [DN 38] at 1.) After conducting a hearing on the emergency motion, the Court denied the motion for an injunction, as well as the motion to amend the complaint, as Plaintiff Jackson had not tendered a proposed amended complaint with his motion. (DN 56.) Plaintiff Jackson then timely filed a renewed motion to amend the complaint, including his proposed amendments. (DN 57.) That motion is now fully briefed and ripe for decision,[4] along with a

---

[3] Jackson's complaint omits a Count IV or V. The Court will refer to the claims as they are labelled in the complaint for ease of cross-reference.

[4] Plaintiff Jackson also filed a motion to amend his response to the motions to dismiss by the Commonwealth Defendants and Louisville Defendants. (DN 39.) This motion has not been fully briefed by all sides, but Plaintiff Jackson asserts the same grounds in support of that motion as his original motion to amend the complaint. Therefore, the Court assumes that Jackson made use of his motion to amend the complaint to address any new evidence that he believes supports both his motion to amend and his opposition to the motions to dismiss.

motion for a hearing on the motion to amend that was filed by the Grant County Defendants. (DN 62.)

## II. STANDARD OF REVIEW

### A. RULE 12(B)(6) MOTION

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79. Instead, a complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 677 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. MOTION FOR LEAVE TO AMEND**

A motion for leave to file an amended complaint is governed by Fed. R. Civ. P. 15(a)(2), which states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." A district court should freely grant leave "when justice so requires." *Id*. However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000)) (internal quotation marks omitted).

**III. DISCUSSION**

Plaintiff Jackson's amended complaint is essentially identical to his original complaint, with the exception of the added allegations that pertain to Jackson III so as to join him as a plaintiff in this action. (*See* Pl.'s First Am. Compl. [DN 57-2] ¶ 13–14, 40) (adding allegations regarding Jackson III but leaving allegations regarding Plaintiff Jackson largely unchanged). Therefore, the Court will first address whether to grant Plaintiff Jackson leave to amend his complaint so as to join Jackson III as a plaintiff. It will then address the motions by the defendants to dismiss the original complaint pursuant to Rule 12(b)(6), since the allegations at issue in those motions are the same as the ones contained in the proposed amended complaint, and the standard for granting leave to amend is the same as the standard for avoiding dismissal under Rule 12(b)(6).

### A. MOTION FOR LEAVE TO AMEND

Plaintiff Jackson seeks to amend his complaint so as to join Jackson III as a plaintiff, adding new factual allegations in the proposed amended complaint that pertain to Jackson III's claims. The Defendants argue that the motion to amend should be denied, as joinder of Jackson III is impermissible under Fed. R. Civ. P. 20(a)(1). That rules states that

> [p]ersons may join in one action as plaintiffs if
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in action.

The claims asserted by Plaintiff Jackson and Jackson III do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Plaintiff Jackson's claims arise from a grand jury referral and indictment from October 2015, and an arrest and detention from December 2015 to March 2016. Conversely, Jackson III's claims pertain to his arrest and detention in May 2015. These two series of events are entirely separate; the only allegation possibly connecting them is that they may have arisen from the Grant County Attorney's Office pursuit of the same individual. But "[m]ere factual similarity between claims is not enough to show that claims arise from the same transaction or occurrence." *Dejesus v. Humana Ins. Co.*, 2016 WL 3630258, at *3 (W.D. Ky. June 29, 2016) (citations omitted). The claims asserted by Jackson III allege only that similar events happened to him and Plaintiff Jackson, not that they arose from the same transaction or occurrence. The length of time that elapsed between the alleged events involving Jackson III and Plaintiff Jackson further demonstrates that these events were separate occurrences with no relation other than their factual similarity. Therefore, joinder under Rule 20(a)(1) would be improper, and the motion for leave to amend the complaint is **DENIED**.

### B. Motions to Dismiss

The Court will address the motions to dismiss by examining the claims against each defendant individually, as most of the grounds for dismissal are specific to each defendant, rather than specific to the claim presented.

### 1. Grant County

Jackson asserts four claims against Grant County: false imprisonment (Count II), § 1983 liability for constitutional violations (Count VII), respondeat superior liability (Count VIII), and violation of RCr 3.02 (Count XII). Grant County argues that the state law claims for false imprisonment, respondeat superior liability, and violating RCr 3.02 must be dismissed, as the county is entitled to sovereign immunity. "A county government is cloaked with sovereign immunity," and the county cannot be held vicariously liable for the acts of its employees, since to do so would "largely nullif[y]" the concept of sovereign immunity. *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003). Sovereign immunity protects a municipality from not just "the burdens of . . . liability, but also of defending the action." *Kentucky v. Samaritan Alliance, LLC*, 439 S.W.3d 757, 760 (Ky. Ct. App. 2014). Therefore, Grant County is immune from any state law claims asserted by Jackson, and those claims must be dismissed.

As to the federal § 1983 claim, Jackson asserts that Grant County had "policies or customs" that led to constitutional violations, including the failure to hire and adequately train and supervise staff so as to prevent constitutional violations. (Pl.'s Compl. [DN 1] ¶ 46–51.) Grant County argues that no constitutional violation occurred that would lead to municipal liability and that Jackson has insufficiently plead a custom or policy that is responsible for any constitutional violations.

Municipal governments are considered "persons" who may be sued under § 1983, but the unconstitutional act at issue must be performed pursuant to a governmental policy or custom in order to establish municipal liability. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Jackson alleges that he was deprived of constitutional rights pursuant to policies or customs of Grant County, but his complaint fails to state a claim for relief under the standard established in *Iqbal*. Jackson states that Grant County developed "policies or customs exhibiting deliberate indifference to the constitutional rights of persons," but he fails to state what those customs or policies are. (Pl.'s Compl. [DN 1] ¶ 47.) He does state that the county "fail[ed] to exercise reasonable care in hiring" and "inadequately supervise[d]" its employees, but these statements provide no factual content upon which the Court could find that he is plausibly entitled to relief. (*Id.* at ¶ 48–49.) The only two individuals alleged to have violated Jackson's constitutional rights who were employed by Grant County are Jernigan and Taylor, and the complaint is devoid of any factual content as to how Grant County failed to exercise reasonable care in hiring, training, or supervising either.[5] The Supreme Court has stated that municipal liability under § 1983 for negligent hiring requires proof that "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 412 (1997) (emphasis in original). However, the complaint contains no allegations that there were red flags that would have indicated that either Jernigan or Taylor would cause the particular constitutional violations alleged by Jackson. And a claim for failure to train or supervise brought under § 1983 against a municipality requires proof that the inadequate training or supervision "was the result of the municipality's deliberate indifference," either in light of "foreseeable consequences that could result from a lack of instruction" or "repeated complaints

---

[5] The parties do not address how Grant County could negligently hire an elected official such as County Attorney Taylor, but the Court need not address this issue due to the pleading deficiencies that warrant dismissal.

of constitutional violations by its officers." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700–01 (6th Cir. 2006) (citations omitted). The complaint makes no mention of past complaints of constitutional violations committed by anyone employed by Grant County,[6] nor does it state what foreseeable consequences would result from a lack of instruction.

Admittedly, the Sixth Circuit has previously permitted § 1983 claims that allege municipal custom or policy with similar vagueness to survive a motion to dismiss under Rule 12(b)(6). *See Petty v. Cty. of Franklin*, 478 F.3d 341, 348 (6th Cir. 2007) ("Given the allegations that Petty makes in his complaint [regarding municipal custom and policy], it is not immediately clear what more Petty could have alleged with respect to the policies that Franklin County might or might not have"). However, *Petty* is a pre-*Iqbal* case, and our sister court has since interpreted *Iqbal* so as to require "more than bare statements that the alleged constitutional violation was caused by a policy or custom to survive a motion to dismiss." *Vidal v. Lexington Fayette Urban Cty. Gov.*, 2014 WL 4418113, at *3 (E.D. Ky. Sep. 8, 2014). Allegations that a municipality "negligently trained and/or supervised" its employees, or that it "failed to instruct, supervise, control, and discipline" its employees, *id.* at *3 (quoting complaint), are "naked assertions devoid of further factual enhancement [that] contribute nothing to the sufficiency of the complaint." *Id.* at *4. Such a complaint "merely recites the legal requirements for a claim against a municipality without any factual allegations that would raise a right to relief above the speculative level." *Id.*

---

[6] Even if the Court had granted the motion to amend the complaint and took into consideration Jackson III's allegations, these would not be sufficient to establish "repeated complaints of constitutional violations." Jackson III does not allege that he complained to Grant County about his treatment so that the county was on notice as to possible constitutional violations and the need for further training or supervision; he merely alleges that his treatment amounted to a constitutional violation. *Ellis* does not look to whether there have been repeated incidents, but rather repeated complaints, and the tendered amended complaint contains no statement to that effect.

Other district courts within the Sixth Circuit have also concluded that "[p]laintiffs are in fact required to identify the practice or policy that forms the basis of their claim." *Ghaster v. City of Rocky River*, 2010 WL 2802685, at *7 (N.D. Ohio May 12, 2010). *See also Kustes v. Lexington-Fayette Urban Cty. Gov.*, 2013 WL 4776343, at *5 (E.D. Ky. Sep. 3, 2013) ("The Plaintiff must describe what the official custom or policy was and describe how it was violated"); *Hutchinson v. Met. Gov. of Nashville and Davidson Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (failure to "include any facts related to a . . . municipal custom, policy or practice" required court to dismiss complaint). Under this heightened pleading standard, the complaint has failed to state a claim under § 1983 for which relief could be granted. Therefore, the § 1983 claim against Grant County must be dismissed along with the state law claims, and the motion to dismiss by Grant County is **GRANTED** as to the claims asserted against it.

## 2. JERNIGAN

### A. OFFICIAL CAPACITY CLAIMS

Jackson asserts five claims against Jernigan: § 1983 liability for constitutional violations (Count I), false imprisonment (Count II), malicious prosecution (XI), violation of RCr 3.02 (Count XII), and abuse of process (Count XIII). His claims are against Jernigan in her official and individual capacities. However, "[a]s long as the government entity [for which the defendant works] receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citations omitted). Therefore, the same analysis applies to the official capacity claims against Jernigan as that of the claims against Grant County. As a municipal entity, it possesses sovereign immunity from any state law claims (Counts II, XI, XII, XIII). Further, a municipality "cannot be held liable solely because it employs a tortfeasor – or, in other

words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Jackson's § 1983 claim against Jernigan alleges that she individually violated his constitutional rights, not that a municipal custom or policy existed that deprived him of his rights. Therefore, Jackson is merely seeking to hold Grant County liable for any violation possibly committed by Jernigan, which is impermissible under *Monell*. As such, all claims against Jernigan in her official capacity must be dismissed.

### B. INDIVIDUAL CAPACITY CLAIMS

Turning to the individual capacity claims, Jernigan enjoys absolute immunity from both federal and state law claims arising out of her grand jury testimony. *Rehberg v. Paulk*, 566 U.S. 356, 369–70 (2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony"); *Martin v. O'Daniel*, 507 S.W.3d 1, 5 (Ky. 2016) ("Consistent with *Rehberg*, Kentucky's common law protects grand jury witnesses from civil suits predicated upon their testimony"). However, Jackson's claims against Jernigan are not solely based upon her grand jury testimony, as the complaint also bases the § 1983 claim on assertions that Jernigan "referr[ed] him for grand jury indictment" and "implicitly authorized, approved, or knowingly acquiesced in the unreasonable search and seizure of [Jackson]." (Pl.'s Compl. [DN 1] ¶ 3–4.) Further, Jackson bases his malicious prosecution and abuse of process state law claims on Jernigan's alleged grand jury referral. Therefore, the Court will look to whether any of Jackson's federal or state law claims can survive the motion to dismiss on this evidentiary basis. *See King v. Harwood*, 852 F.3d 568, 584 (6th Cir. 2017) ("*Rehberg* does not affect the thin but conspicuous line between, on the one hand, law-enforcement officers who only provide grand-jury testimony . . . and, on the other hand, law-enforcement officers who . . . set the wheels of government in motion by instigating a legal action . . .") (citations and quotations omitted).

## I. FEDERAL CLAIMS

As to the § 1983 claim, Jernigan asserts she is entitled to qualified immunity. Qualified immunity is a defense "which shields government officials from personal 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In determining whether qualified immunity applies, [the court] employ[s] a two-part test, asking (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (internal quotation marks omitted). However, when "a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2006) (citing *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006)).

As a final note before addressing Jernigan's assertion of qualified immunity, the Sixth Circuit has held that

> it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.

*Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (internal citations and quotations omitted). There is no heightened factual showing that a plaintiff must make in order to survive a motion to dismiss on qualified immunity grounds that is different than the plausibility standard established under *Iqbal*. *Id.* at 427–28. Although qualified immunity does protect the defendant from all burdens of litigation, including "the burdens of discovery," *Iqbal*, 556 U.S. at 672

(citations omitted), the fact-intensive nature of a qualified immunity defense makes it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*." *Wesley*, 779 F.3d at 434 (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)) (emphasis in original).

Jernigan asserts that no constitutional violation occurred, which would entitle her to qualified immunity. While the complaint is vague as to what constitutional right was specifically violated by Jernigan, Jackson's response to Jernigan's motion to dismiss focuses on the "'constitutionally cognizable claim of malicious prosecution,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" (Pl.'s Resp. to Def.'s Mot. to Dismiss [DN 40] at 2) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). This claim would cover both of the alleged actions taken by Jernigan, in making the grand jury referral and implicitly authorizing Jackson's detention. Therefore, the Court must look to whether Jackson has alleged a constitutional violation in the form of malicious prosecution.

Under Sixth Circuit precedent, there are four elements to a claim of malicious prosecution brought under § 1983: (1) "the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute;" (2) "the plaintiff must show that there was a lack of probable cause for the criminal prosecution;" (3) "the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure;" and (4) "the criminal proceeding must have been resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (internal citations and quotations omitted).

Without regard to the other elements, Jackson has failed to establish in his complaint that there was a lack of probable cause for the prosecution against him. Jackson was indicted by a grand jury, and "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (quotations omitted). An indictment may be attacked on the basis that it was obtained throught knowing or reckless false testimony. *See Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015). However, the Sixth Circuit's recent opinion in *Sanders v. Jones*, 845 F.3d 721 (6th Cir. 2017), addresses the tension between the absolute immunity granted to grand jury witnesses for their testimony and the ability to attack an indictment based upon alleged falsities in that testimony. *Sanders*, 845 F.3d at 732–35. Under Sixth Circuit precedent, "a plaintiff who was indicted by a grand jury can overcome the presumption of probable cause only by evidence that the defendant made false statements to the grand jury." *Id.* at 732. However, the defendant "is absolutely immune under *Rehberg*" for any statements made to the grand jury. *Id.* at 733. Therefore, a plaintiff is prohibited from using the evidence that is most necessary to proving that the grand jury testimony was false: the testimony itself. This scenario is equally applicable to the present case. Jackson's indictment conclusively determines the existence of probable cause, unless he can show that it was obtained on the basis of knowing or reckless false testimony. He cannot show this, though, without using Jernigan's testimony before the grand jury to show that it was false, which is impermissible under *Rehberg*.

Thus, there is no doubt under *Sanders* that Jackson cannot use Jernigan's grand jury testimony to show that the indictment lacked probable cause. But is there other evidence that he could use to show this? *Sanders* notes that "[t]he *Rehberg* Court . . . do[es] not suggest that absolute immunity extends to *all* activity that a witness conducts outside the grand jury room . . .

falsifying affidavits and fabricating evidence would constitute unprotected acts." *Sanders*, 845 F.3d at 734 (quotations omitted) (emphasis in original). But Jackson's complaint does not contain any allegations like these that would show that the indictment was not based on probable cause; his sole argument against the existence of probable cause is that Jernigan falsely testified before the grand jury. Any attempt by Jackson to use the grand jury referral as evidence would be futile, as there is no allegation that this referral was intentionally made with false information. *Sanders* forecloses the undermining of an indictment "through negligent and reckless investigation and critical omissions of material evidence," instead requiring active falsification and fabrication that has not been alleged here. *Id.* As such, complaint is devoid of allegations that could both support the argument that probable cause did not exist and not be subject to immunity. The Sixth Circuit admitted that "this application of *Rehberg* may seem harsh in largely foreclosing malicious prosecution claims where the plaintiff was indicted." *Id.* But this Court is bound by that decision. Thus, because Jackson has not adequately pleaded facts that could plausibly establish a lack of probable cause, he has not sufficiently pleaded that Jernigan violated a constitutional right.

However, the Court finds dismissal for failure to state a claim more appropriate than dismissal on qualified immunity grounds. Because the defense of qualified immunity was raised in a Rule 12 motion, the standard for whether Jernigan is entitled to qualified immunity essentially collapses into the standard for whether Jackson has sufficiently plead his claim for relief. *Wesley*, 779 F.3d at 427–28. *See also Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) ("At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined") (quotations omitted); *Morgan v. Swanson*, 659 F.3d 359, 384 (5th Cir. 2011) ("At the 12(b)(6) stage, to hold that the defendant violated the law

at step one of the qualified-immunity analysis . . . is simply to say that the plaintiff has stated a claim upon which relief may be granted"). For both enquiries, the Court merely looks to whether Jackson has sufficiently stated a claim for a constitutional violation; if he has failed to do that, dismissal is warranted for either failing to state a claim or qualified immunity. But dismissal on 12(b)(6) grounds is more appropriate at this early stage than dismissal on qualified immunity grounds, as Jackson has not even adequately stated a claim upon which relief could be granted, regardless of Jernigan's immunity from liability on that claim. Therefore, the § 1983 claim against Jernigan must be dismissed.

## II. STATE CLAIMS

As to the state law individual capacity claims, Jernigan also asserts that she is entitled to qualified immunity. Under Kentucky law,

> [q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ; (2) in good faith; and (3) within the scope of the employee's authority.

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Jernigan argues that the complaint establishes that she was performing a discretionary act, as it seeks to hold her liable for "referring [Jackson] for grand jury indictment without taking appropriate efforts to confirm the Plaintiff's identity." (Pl.'s Compl. [DN 1] ¶ 3.) She argues that this is a discretionary choice, as opposed to a ministerial act "that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative."[7] *Yanero*, 65 S.W.3d at 522. She also argues that there is no allegation in the complaint that Jernigan was acting outside the scope of her office.

---

[7] Jernigan has not argued that the decision to refer Jackson's case to the grand jury is protected under the doctrine of prosecutorial immunity as articulated in *Imbler v. Patchman*, 424 U.S. 409 (1976), and subsequent cases.

Even if the Court accepts these arguments, it would be inappropriate to determine at this stage whether Jernigan was acting in good faith. "Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id.* at 523. This case is before the Court on a motion to dismiss under Rule 12(b)(6); Jackson has sufficiently peld bad faith by alleging that Jernigan referred him to the grand jury for indictment "without taking appropriate efforts to confirm [his] identity." (Pl.'s Compl. [DN 1] ¶ 3.) *See Wales v. Pullen* 390 S.W.3d 160, 167 (Ky. Ct. App. 2012) (bad faith element of qualified immunity looks to whether the official "acted in an objectively unreasonable way in carrying out his duties"). Under this burden shifting scheme, Jackson must be given an opportunity to present evidence that supports his pleadings. Therefore, the Court declines to find that Jernigan is entitled to qualified immunity at this time on her state law claims.

However, Jernigan argues that each claim should still be dismissed, as they fail to state a claim upon which relief could be granted. First, as to the false imprisonment claim, Jackson must allege that he was detained and that the detention was unlawful. *Jefferson Dry Goods Co. v. Stoess*, 199 S.W.2d 994, 996 (Ky. Ct. App. 1947). If there is probable cause for the arrest, then it was lawful. KRS § 431.005(1)(c). The effect of an indictment in Kentucky as to whether probable cause existed for the arrest differs from the federal standard established by the Sixth Circuit, but its effect is very similar. Under Sixth Circuit precedent, a validly issued indictment "conclusively determines the existence of probable cause," but that indictment may then be attacked as being based on false testimony. *Webb*, 789 F.3d at 660. Under Kentucky law, an indictment only creates a rebuttable presumption of probable cause, but that presumption can be

rebutted by evidence of improper motive or acts by the defendant in procuring the indictment. *See Conder v. Morrison*, 121 S.W.2d 930, 931 (Ky. Ct. App. 1938). Under both standards, a plaintiff must present some evidence, or in this case plead some factual content, to show that, in spite of the indictment, probable cause did not exist.

Jackson has alleged no such conduct by Jernigan that would rebut the presumption of probable cause that arises from the indictment. Kentucky affords grand jury witnesses the same immunity for their testimony as federal courts do under *Rehberg*. *Martin*, 507 S.W.3d at 5. Therefore, Jernigan's grand jury testimony cannot be used to attack the presumption of probable cause. And there are no allegations that Jernigan engaged in behavior such as "falsifying affidavits [or] fabricating evidence" that would both undermine the presumption of probable cause and not be subject to immunity. *Sanders*, 845 F.3d at 734. Therefore, Jackson has failed to plead that his detention was unlawful, and the claim must be dismissed.

Next, as to the malicious prosecution claim, Jackson must allege "(i) the institution or continuation of judicial proceedings; (ii) by, or at the instance of, the defendant; (iii) the termination of such proceedings in the plaintiff's favor; (iv) malice; (v) lack of probable cause; and (vi) damages." *Jones v. Clark Cty.*, 2016 WL 4146119, at *9 (E.D. Ky. Aug. 3, 2016) (citing *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981)). The same analysis applies to this claim as the false imprisonment claim, as the indictment creates a presumption of probable cause, and the complaint contains no allegations that Jernigan engaged in any behavior that would rebut this presumption while not being subject to immunity. Therefore, Jackson has failed to state a claim for malicious prosecution, and the claim must be dismissed.

As for the claim for violations of RCr 3.02, it appears that Kentucky courts do not recognize a cause of action for such violations. Rather, a violation of the statute may give rise to

a claim for false imprisonment; alternatively, compliance with the statute may serve as a defense to a claim for false imprisonment.  *See Callihan v. Kirk*, 419 S.W.2d 539, 540 (Ky. Ct. App. 1967); *Butcher v. Adams*, 220 S.W.2d 398, 400 (Ky. Ct. App. 1949).  Regardless, the rule states, "An officer making an arrest under a warrant issued upon a complaint shall take the arrested person without unnecessary delay before a judge as commanded in the warrant."  Jernigan is not alleged to have been the arresting officer; therefore, she could not have violated the statute, and the claim must be dismissed.

Finally, Jackson asserts a state law abuse of process claim.  A claim for abuse of process requires the plaintiff to establish "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding."  *George v. Lavit*, 2006 WL 3228616, at *2 (Ky. Ct. App. Nov. 9, 2006) (citing *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765, 766 (Ky. Ct. App. 1980)).  Jackson asserts that Jernigan abused the legal process by referring the case to the grand jury.  (Pl.'s Compl. [DN 1] ¶ 3.)  Jernigan argues that the claim is barred by a one-year statute of limitations, as the grand jury referral took place on September 9, 2015, more than a year before the complaint was filed.[8]  In support of this argument, she cites to *DeMoisey v. Ostermiller*, 2016 WL 2609321 (Ky. Ct. App. May 6, 2016).  In that case, the Court of Appeals of Kentucky held that (1) abuse of process has a one-year statute of limitations, as it requires an injury to the person or his property, *see* KRS § 413.140(1)(a) (establishing one year statute of limitations for an action "for an injury to the person of the plaintiff"), and (2) the statute of limitations begins to run "from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued."  *DeMoisey*, 2016 WL 2609321, at *14 (citations omitted).  *DeMoisey*, however, was ordered not

---

[8] Jernigan testified on October 14, 2015, but because Jernigan is immune for any claim arising out of her grand jury testimony, that date is not relevant, as her testimony cannot give rise to a viable claim.

to be published, casting doubt on its value as precedent. Jackson has not responded to the argument that the claim is time-barred.

Regardless of *DeMoisey*, federal district courts in Kentucky have consistently held that abuse of process claims are subject to a one-year statute of limitations under KRS § 413.140(1)(a). *See Maqablh v. Heinz*, 2016 WL 7192124, at *8 (W.D. Ky. Dec. 12, 2016); *Vidal*, 2014 WL 4418113, at *7; *Dickerson v. City of Hickman*, 2010 WL 816684, at *5 (W.D. Ky. Mar. 4, 2010) ("[A] cause of action for abuse of process has been generally held to accrue . . . from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued") (quoting 1 A.L.R.3d 953 § 1). Therefore, Jackson's claim for abuse of process is time-barred. As such, all of Jackson's claims against Jernigan in her individual capacity must be dismissed, and the motion to dismiss is **GRANTED** as to the claims asserted against her.

### 3. TAYLOR

#### A. OFFICIAL CAPACITY CLAIMS

Jackson asserts five claims against Taylor: § 1983 liability for constitutional violations (Count I), false imprisonment (Count II), malicious prosecution (XI), violation of RCr 3.02 (Count XII), and abuse of process (Count XIII). Jackson has sued Taylor in his official and individual capacities. As to the official capacity claims, the analysis is largely identical to that of the official capacity claims against Jernigan. Official capacity claims against Taylor are to be treated as claims against Grant County, and Grant County is entitled to sovereign immunity for all state law claims against it. Further, Jackson's § 1983 claim against Taylor alleges that he individually violated his constitutional rights, not that a municipal custom or policy existed that deprived him of his rights. Therefore, Jackson is merely seeking to hold Grant County liable for

any violation possibly committed by Taylor, which is impermissible under *Monell*. As such, all claims against Taylor in his official capacity must be dismissed.

## B. INDIVIDUAL CAPACITY CLAIMS

### I. FEDERAL CLAIMS

Jackson's claims against Taylor are solely based upon Taylor's failure to supervise Jernigan in her role at the Grant County Attorney Child Support Division. (Pl.'s Compl. [DN 1] ¶ 9, 17.) As to the § 1983 claim, Taylor argues that he cannot be liable since there is no underlying constitutional violation committed by Jernigan that could have been prevented by more thorough supervision. The Sixth Circuit held in *Bellamy v. Bradley* that

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the *unconstitutional conduct* of the offending subordinate.

729 F.2d 416, 421 (6th Cir. 1984) (emphasis added). As stated above, Jackson has failed to adequately plead a constitutional malicious prosecution claim against Jernigan, as he has pleaded no facts that would plausibly establish that there was not probable cause for the charges brought against him. If the complaint cannot support a constitutional claim against Jernigan, then Taylor cannot be liable for failing to prevent that constitutional violation through adequate supervision. Therefore, the 1983 claim against Taylor must be dismissed.

### II. STATE CLAIMS

Taylor argues that he is entitled to qualified immunity as to the state law claims asserted against him. But as with Jernigan, it is premature for the Court to determine if he is entitled to

qualified immunity, as Jackson must be afforded the opportunity to put forth evidence that Taylor acted in bad faith.

However, each of the state law claims should be dismissed against Taylor for reasons similar to those that mandated dismissal of the claims against Jernigan. Jackson has only alleged that Taylor failed to supervise Jernigan; he has not alleged that Taylor took any affirmative actions that would have given rise to any of the claims. But he has not brought any claim for negligent supervision against Taylor that would actually look to the reasonableness of Taylor's actions. Thus, the complaint only seeks to hold Taylor vicariously liable for the torts committed by Jernigan. Under this theory, since all of the state law claims against Jernigan were insufficiently plead, no claim against Taylor under a theory of vicarious liability is viable. Therefore, the motion to dismiss all claims against Taylor is **GRANTED** as to the claims asserted against him.

### 4. LOUISVILLE METRO

Jackson asserts four claims against Louisville Metro: false imprisonment (Count II), § 1983 liability for constitutional violations (Count III), respondeat superior liability (Count VI), and violation of RCr 3.02 (Count XII). As a municipal government, the same analysis that applied to the claims against Grant County applies to Louisville Metro. Louisville Metro possesses sovereign immunity from any state law claims (Counts II, VI, and XII), which includes immunity from the burden of litigation, not just liability. *Schwindel*, 113 S.W.3d at 163; *Samaritan Alliance*, 439 S.W.3d at 760. And Jackson's claim for municipal liability under § 1983 (Count III) is again deficiently plead, as it claims that Louisville Metro had customs and policies pertaining to hiring, training, and supervising employees that led to constitutional violations, but it does not state what those policies or customs were. *Vidal*, 2014 WL 4418113,

at *3.  Therefore, the motion to dismiss by Louisville Metro is **GRANTED** as to the claims asserted against it.

### 5. LMPD

Jackson asserts three claims against LMPD: false imprisonment (Count II), § 1983 liability for constitutional violations (Count III), and violation of RCr 3.02 (Count XII).  LMPD argues that it is not an entity that is capable of being sued, and the Court agrees.  "[T]he [Jefferson County] Police Department is not an entity which may be sued, [so] Jefferson County is the proper party to address the allegations of [the] complaint."  *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Smallwood v. Jefferson Cty. Gov.*, 743 F. Supp. 502, 503 (W.D. Ky. 1990)).  Therefore, the motion to dismiss all claims against LMPD is **GRANTED** as to the claims asserted against it.

### 6. LAWSON

#### A. OFFICIAL CAPACITY CLAIMS

Jackson asserts three claims against Lawson: § 1983 liability for constitutional violations (Count I), false imprisonment (Count II), and violation of RCr 3.02 (Count XII).  Jackson has brought these claims against Lawson in both his official and individual capacities.  The official capacity claims against Lawson are to be treated as claims against the governmental entity that employs him, Louisville Metro.  Louisville Metro is entitled to sovereign immunity from any state law claims; thus, the false imprisonment and RCr 3.02 claims must be dismissed.  Further, Jackson's § 1983 claim against Lawson alleges that he individually violated his constitutional rights, not that a municipal custom or policy existed that deprived him of his rights.  Therefore, Jackson is merely seeking to hold Louisville Metro liable for any violation possibly committed

by Lawson, which is impermissible under *Monell*.  As such, all claims against Lawson in his official capacity must be dismissed.

### B. INDIVIDUAL CAPACITY CLAIMS

### I. FEDERAL CLAIMS

Jackson's § 1983 claim against Lawson alleges two constitutional violations.  First, Jackson asserts a constitutional false arrest claim, on the basis that Lawson was deliberately indifferent to the physical description and address of the individual listed on the arrest warrant, which described the person sought as being five feet, seven inches tall, six inches shorter than Jackson.  This false arrest led to violations of his Fourth, Fifth, and Fourteenth Amendment rights. Second, Jackson asserts that his Fourteenth Amendment right to equal protection was violated when Lawson assumed Jackson was the individual to be arrested because he was already in custody on other charges at the time.

As to the false arrest claim, Lawson argues that no constitutional violation occurred, but even if one did occur, he is entitled to qualified immunity.  He argues that the warrant was facially valid, supported by probable cause as found by the grand jury who issued the indictment, and any mistake that may have been made in arresting Jackson was reasonable.  Jackson argues that he has a clearly established constitutional right protecting him against unreasonable arrest, and that the height discrepancy between him and the individual sought was so great that no reasonable officer would have arrested him under the circumstances.  The warrant sought an individual who was five feet, seven inches tall and who lived in Grant County; Jackson argues that he is six feet, one inch tall and lives in Jefferson County, making his arrest unreasonable under the circumstances.

Jackson relies almost exclusively on the Sixth Circuit's opinion in *Webb* to support his argument that officers behaved unreasonably when they arrested Jackson despite the warrant seeking a man six inches shorter, as *Webb* involved a similar six-inch height discrepancy between the plaintiff and an individual believed to be him. *Webb*, 789 F.3d at 661–63. However, the height discrepancy in *Webb* arose under different circumstances, as the plaintiff in that case was attempting to show that a grand jury witness testified with deliberate indifference to the true identity of the target of a criminal investigation, thereby undercutting the presumption of probable cause that arose from the indictment. *Id.* at 661.

The Court finds *Gray v. Cuyahoga Cty. Sheriff's Dept.*, 150 F.3d 579 (6th Cir. 1998) (as amended, 160 F.3d 276 (memorandum)), to be the most on-point case dealing with the issues presented here. Just as in this case, "[t]he question presented [in *Gray*] is whether someone who is wrongly imprisoned as a result of mistaken identity can state a constitutional claim against his jailers based on their failure to ascertain that they had the wrong man." *Gray*, 150 F.3d at 582. In *Gray*, a man named Dwayne Gray was booked into jail on legitimate charges when the jailers were notified of an outstanding warrant against an individual also named Dwayne Gray.[9] Officers arrested the plaintiff and had him extradited, where he was held for over 40 days before the mistake was realized and he was released. The Court in *Gray* characterized the claim as one for deprivation of liberty without due process, and it found persuasive a line of cases that permitted plaintiffs to take their cases to a jury when there is a "significantly long[ ] period of incarceration [30 and 12 days as examples], coupled with the fact that the defendants apparently had the ability to discover[ ] the error in identification." *Id.* at 582.

_____

[9] While the case of Dwayne Gray was one of stolen identity, rather than mistaken identity, that does not affect its applicability to this case.

Under *Gray*, Jackson has stated a claim for deprivation of liberty without due process. He has alleged that he was arrested on the basis of mistaken identity; that the arresting officer had the means to know that he was not the individual they sought via the description on the warrant; that he protested his innocence;[10] and that he was detained for such a lengthy period of time (60 days incarceration and 30 days house arrest) that it would amount to a deprivation of liberty under the Fourteenth Amendment. (Pl.'s Compl. [DN 1] ¶ 7, 8, 18, 26, 31.) Thus, taking the complaint in a light most favorable to Jackson, he has stated a claim for relief for constitutional violations under § 1983, defeating Lawson's first argument for qualified immunity.

The *Webb* decision does become informative as to the second consideration for qualified immunity: whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fettes v. Hendershot*, 375 F. App'x 528, 531 (6th Cir. 2010) (quotations omitted). *Webb* states that "[a] law-enforcement defendant is deliberately indifferent – and therefore not entitled to qualified immunity – if he mistakenly identifies an individual as a suspect when the individual does not match the suspect's description." *Webb*, 789 F.3d at 662. This becomes all the more persuasive when one of the physical discrepancies in that case is the same as it was here: a six-inch height difference. When this height discrepancy is coupled with the alleged address discrepancy, Jackson has sufficiently demonstrated, at this early stage, that it would have been unreasonable for an officer to arrest him on that warrant. Discovery may reveal that Lawson acted reasonably under the circumstances, but based on the allegations, Jackson's

---

[10] Jackson's complaint asserts that he protested his innocence at least at his arraignment. (Pl.'s Compl. [DN 1] ¶ 26.) *Gray* and its progeny emphasize that protesting innocence is an important factor in determining if there has been a constitutional violation. *See Thurmond v. Cty. of Wayne*, 447 F. App'x 643, 649 (6th Cir. 2011). Lawson has not specifically argued that Jackson never protested his innocence to him while he was making the arrest. Regardless, an issue of fact such as that is most appropriately addressed either on summary judgment or at trial. The important point at this stage is that Jackson has stated in his complaint that he protested his innocence.

claim may proceed. Therefore, the Court will not dismiss the § 1983 claim for false arrest against Lawson at this time.

As for the equal protection claim, the parties do not address this claim specifically in their briefs. Lawson argues broadly that his arrest of Jackson "did not offend the Constitution" and that he entitled to qualified immunity. (Def.'s Mot. to Dismiss [DN 23] at 9.) In his response, Jackson focuses solely on the false arrest claim. Because Lawson has not specifically raised this issue in his motion to dismiss, the Court will not dismiss this claim at this time. Therefore, Lawson's motion to dismiss is **DENIED** as to the federal § 1983 claims.

## II. STATE CLAIMS

Jackson brings two state claims against Lawson: false imprisonment and a violation of RCr 3.02. As stated above, Kentucky courts do not recognize a cause of action for violations of RCr 3.02. Rather, a violation of the statute may give rise to a claim for false imprisonment, whereas compliance with the statute may serve as a defense. *See Callihan*, 419 S.W.2d at 540; *Butcher*, 220 S.W.2d at 400. Thus, the false imprisonment claim is the only viable state law claim against Lawson, but compliance with RCr 3.02 may be considered as evidence supporting or refuting the claim. However, Lawson does not move for dismissal of these claims; his motion to dismiss is solely focused on the § 1983 claims for constitutional violations. Therefore, the Court will not dismiss the false imprisonment claim against Lawson at this time,[11] and the motion to dismiss is **DENIED** as to that claim.

---

[11] To the extent that Lawson's argument that he is entitled to qualified immunity could also be extended to the state law claims against him, the Court declines to find that Lawson is entitled to qualified immunity at this time. Just as with Jernigan and Taylor, qualified immunity defenses in Kentucky require that the plaintiff be given a chance to demonstrate bad faith on the part of the defendant. Therefore, dismissal at this early stage on qualified immunity grounds would be premature.

### 7. COMMONWEALTH OF KENTUCKY

Jackson asserts four claims against the Commonwealth: false imprisonment (Count II), § 1983 liability for constitutional violations (Count IX), respondeat superior liability (Count X), and violation of RCr 3.02 (Count XII). The same sovereign immunity that shields Grant County and Louisville Metro as municipalities also protects the Commonwealth, as the sovereign immunity of a municipality derives from the state. *Yanero v. Davis*, 65 S.W.3d 510, 517–18 (Ky. 2001) ("It is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity"). Therefore, the state law claims (Counts II, X, and XII) must be dismissed due to the Commonwealth's sovereign immunity. And once again, Jackson's claim asserting the Commonwealth is liable under § 1983 (Count III) is deficiently plead. It claims that the Commonwealth, through the Commonwealth's Attorney, had customs and policies pertaining to hiring, training, and supervising employees that led to constitutional violations, but it does not state what those policies or customs were. *Vidal*, 2014 WL 4418113, at *3. As such, Count III must be dismissed as well. Therefore, the motion to dismiss by the Commonwealth is **GRANTED** as to the claims asserted against it.

### 8. CRAWFORD

#### A. OFFICIAL CAPACITY CLAIMS

Jackson asserts four claims against Crawford: § 1983 liability for constitutional violations (Count I), false imprisonment (Count II), malicious prosecution (XI), and violation of RCr 3.02 (Count XII). Jackson has brought these claims against Crawford in both his official and individual capacities. The official capacity claims against Crawford are to be treated as claims against the governmental entity that employs him, the Commonwealth of Kentucky. The

Commonwealth is entitled to sovereign immunity from any state law claims; thus, the false imprisonment, malicious prosecution, and RCr 3.02 claims must be dismissed. Further, Jackson's § 1983 claim against Crawford alleges that he individually violated his constitutional rights, not that a state custom or policy existed that deprived him of his rights. Therefore, Jackson is merely seeking to hold the Commonwealth liable for any violation possibly committed by Crawford, which is impermissible under *Monell*. As such, all claims against Crawford in his official capacity must be dismissed.

### B. INDIVIDUAL CAPACITY CLAIMS

Jackson asserts in his complaint that both the federal and state claims against Crawford arise from Crawford "fail[ing] to take appropriate efforts to confirm the Plaintiff's identity before knowingly, recklessly, and with deliberate indifference to the Plaintiff's rights and the truth maliciously prosecuting the Plaintiff without probable cause at the aforementioned grand jury proceeding[.]" (Pl.'s Compl. [DN 1] ¶ 5.) Crawford argues that because all of the claims arise from his official prosecutorial duty of presenting cases to the grand jury for indictment, he possesses prosecutorial immunity from all state and federal claims asserted against him. Jackson argues that Crawford either does not or should not possess such immunity. (Pl.'s Resp. to Def.'s Mot. to Dismiss [DN 33] at 9–10.)

While "prosecutorial immunity has a longstanding tradition in the common law, the *Imbler v. Patchman* [424 U.S. 409 (1976)] decision was the Supreme Court's first explicit recognition that prosecutors enjoy absolute immunity from § 1983 suits for damages when they act within the scope of their prosecutorial duties." *Rouse v. Stacy*, 478 F. App'x 945, 947 (6th Cir. 2012). This immunity is borne out of the concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility

that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423. The *Imbler* Court specifically found that a prosecutor was immune for his or her conduct in "initiating a prosecution and in presenting the State's case," as that conduct is "intimately associated with the judicial phase of the criminal process." *Id.* at 430–31. After *Imbler*, the Supreme Court in *Burns v. Reed*, 500 U.S. 478 (1991), noted that "[t]here is widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries," citing to the Sixth Circuit's opinion in *Grant v. Hollenbach*, 870 F.2d 1135 (6th Cir. 1989), as support. *Burns*, 500 U.S. at 490 n. 6. Kentucky courts assume a similar position on prosecutorial immunity from state law claims, "providing absolute immunity for a prosecutor's actions taken as an advocate[.]" *Howell v. Sanders*, 668 F.3d 344, 355 (6th Cir. 2012).

Based on Jackson's allegations against him, Crawford is entitled to prosecutorial immunity for all claims brought against him. Jackson alleges that all of the claims against Crawford arise out of Crawford's presentation of his case before the grand jury for the purpose of seeking an indictment. This act is one that a prosecutor routinely takes "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State[.]" *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). As such, Crawford is immune for his presentation of Jackson's case before the grand jury. Without that conduct, Jackson has no viable claim for relief, as all federal and state claims asserted against Crawford were entirely premised on his presentation of the case to the grand jury. Therefore, all claims against Crawford in his individual capacity must be dismissed, and the motion to dismiss by Crawford is **GRANTED** as to the claims asserted against him.

### C. Motion for Hearing

Finally, the Grant County Defendants have moved the Court for a hearing on Jackson's motion to amend so as to clarify "numerous inaccurate and/or unsupported statements of law and fact" in Jackson's reply brief.  (DN 62, at 1.)  The Court does not feel that a hearing is necessary to decide the above issues.  Therefore, the motion is **DENIED**.

### IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff Jackson's motion to amend the complaint (DN 57) is **DENIED**;

(2) the motion to dismiss by Defendants Jernigan, Taylor, and Grant County (DN 34) is **GRANTED**;

(3) the motion to dismiss by Defendants Crawford and the Commonwealth of Kentucky (DN 25, 26) is **GRANTED**;

(4) the motion to dismiss by Defendants Lawson, LMPD, and Louisville Metro (DN 23) is **GRANTED IN PART** and **DENIED IN PART**; and

(5) the motion for a hearing by Defendants Jernigan, Taylor, and Grant County (DN 62) is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 11, 2017

cc: counsel of record