UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:16-CV-00750-JHM

JAMES A. JACKSON                                                                      PLAINTIFF

v.

THOMAS LAWSON,
in his individual capacity                                                            DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment by defendant Thomas Lawson. (DN 98.) Plaintiff James A. Jackson has responded with a brief that also includes a cross-motion for summary judgment and a motion in limine to exclude certain evidence. (DN 102.) Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

On August 22, 2011, Grant County Circuit Court entered a default judgment against an individual named James A. Jackson, adjudging him to be the natural father of a child whose custodian was receiving state assistance and ordering him to pay child support. (Support Order [DN 34-2] at 1.) The support order identifies Jackson as having a social security number ("SSN") that ends in 6503. (*Id.*) This support order was never challenged, and as of September 9, 2015, an arrearage of $12,043.91 had accumulated. (Grand Jury Referral [DN 34-3] at 1.) Due to this arrearage, the office of Julie Scott Jernigan of the Grant County Attorney Child Support Division faxed a grand jury referral to Commonwealth's Attorney James Crawford, seeking to indict Jackson for felony non-support. (*Id.*) The grand jury referral identifies Jackson

as being born in 1983 and having a SSN that ends in 6503.[1]  (*Id.*)  An indictment was returned by the grand jury, which also identified Jackson as being born in 1983 and having a SSN that ends in 6503.  (Indictment [DN 34-4] at 1.)  A warrant was then issued for the arrest of James A. Jackson.  (Warrant [DN 34-5] at 1.)  The warrant indicates that Jackson was born in 1983, is five feet seven inches tall, and has an address of 4720 Cynthiana.  (*Id.*)  It states that his race is unknown, and it lists no information for his city, state, zip code, gender, weight, and operator license number.  (*Id.*)

On December 16, 2015, Louisville Metro Police Department ("LMPD") Officer Lawson was dispatched to an alley behind Garvin Place in Louisville after receiving a report of drug activity.  (Arrest Citation [DN 98-8] at 1.)  Upon arriving, Officer Lawson found a man sitting in the alley with an uncapped needle and a brown substance with suspected heroin nearby.  (*Id.*)  Lawson received consent to search the individual, conducted a search, and recovered a paper identification card.  (Dep. Lawson I [DN 102-1] at 20:9–19.)  This identification card had a name and SSN listed.  (*Id.*)  Through this card, Officer Lawson was able to confirm the identity of the suspect as James A. Jackson.  While still on the scene behind Garvin Place, Lawson used the SSN on Jackson's identification card to search for active warrants in the National Crime Information Center and eWarrants databases.  (*Id.* at 20:1–8.)  This search indicated that Jackson had possible active warrants out against him.  (*Id.*)  Officer Lawson charged Jackson with possession of a controlled substance and possession of drug paraphernalia, arrested him, and took him to Louisville Metro Department of Corrections.  (Arrest Citation [DN 98-8] at 1; Dep. Lawson II [102-2] at 1:17–2:1.)

---

[1] The grand jury referral, as well as the indictment, actually includes Jackson's full date of birth and SSN. Additionally, the warrant includes Jackson's full date of birth.  This information has been redacted so as to only reveal the year of birth and the last four digits of the SSN.  But the parties have not disputed that the date of birth and SSN included in these documents fully matched the information provided by Jackson to Officer Lawson.

Once at the Department of Corrections, Officer Lawson again searched for warrants against Jackson. (Dep. Lawson II [DN 102-2] at 1:17–2:1.) Jackson had multiple warrants against him from Jefferson County and one from Grant County. (*Id.* at 1:13–16.) Officer Lawson told Jackson that he had active warrants, including one from Grant County, and updated the eWarrants database to show that he had served the warrants. (*Id.* at 2:5–3:10.) When he told Jackson that one of the warrants was for felony non-support out of Grant County, Officer Lawson testified that Jackson "said he didn't think it was him." (*Id.* at 3:23.) Jackson testified that he does not remember if Lawson ever told him that he had active warrants while in custody, but he indicated that he protested the Grant County warrant before his hearing on the drug charges when his lawyer informed him that he would continue to be held because of the Grant County charges. (Dep. Jackson [DN 98-3] at 69:9–70:22.)[2] While the warrant listed Jackson's height as five feet seven inches, Jackson is actually six feet one inch tall. (Dep. Lawson II [DN 102-2] at 13:22–14:2.) Jackson's address also did not match the address listed in the Grant County warrant. (*Id.* at 14:3–6.) But it did list a name and birthday identical to those of Jackson. Officer Lawson testified that once Jackson told him that he didn't think he was the person sought by Grant County, he "went through [his] steps" to confirm that Jackson was the correct person, although the only specific step he mentioned was verifying that the date of birth given to him by Jackson matched the date on the warrant. (Dep. Lawson II [DN 102-2] at 4:4–11.)

Jackson's drug charges were resolved on December 28, 2015. (Order of Release [DN 98-15] at 1.) But because of the Grant County warrant, he was taken to Grant County Detention Center on December 29, 2015, where he remained until February 24, 2016, when his bond was reduced to an amount he could post. (Pl.'s Compl. [DN 1] at ¶ 28.) After securing an agreed order for genetic testing, the results of the test were filed on March 4, 2016, which revealed a

---

[2] The Court has only been provided portions of Jackson's deposition testimony.

zero percent probability that Jackson was the father of the child who was owed support. (Paternity Test [DN 1-1] at 1.) An order dismissing the charges was entered on March 15, 2016. (Dismissal Order [DN 1-7] at 1.)

Jackson initiated this action on November 29, 2016, making claims against nine defendants.[3] (*Id.* at ¶ 1–2.) He asserted various state-law and constitutional claims against three groups of defendants: the "Grant County Defendants," which includes Jernigan of the Grant County Attorney Child Support Division, Grant County Attorney Lescal Joe Taylor, and Grant County; the "Louisville Defendants," which includes Officer Lawson, LMPD, and the Louisville/Jefferson County Metro Government ; and the "Commonwealth Defendants," which includes Commonwealth's Attorney James Crawford and the Commonwealth of Kentucky. (*Id.*) All defendants filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (*See* DN 23, 25, 26, 34.) The Court granted those motions as to all defendants except Officer Lawson, as the Court found that Jackson had adequately alleged a claim under 42 U.S.C. § 1983 for deprivation of liberty without due process against Officer Lawson under *Gray v. Cuyahoga Cty. Sheriff's Dept.*, 150 F.3d 579 (6th Cir. 1998) (as amended, 160 F.3d 276 (memorandum)). (DN 67, at 27–28.) The Court also allowed Jackson's federal § 1983 claim for denial of equal protection and state-law claim for false imprisonment to proceed, as Officer Lawson had not specifically argued that those claims should be dismissed.

Officer Lawson now moves for summary judgment as to all remaining claims against him. (DN 98.) He argues that he is entitled to summary judgment both on the merits of all claims and on qualified immunity grounds. In Jackson's opposition to the motion, he states that he is cross-moving for summary judgment and moves to exclude three categories of evidence on

---

[3] Subsequently, Jackson filed a notice of voluntary dismissal as to his claims against the City of Williamstown, leaving only eight defendants. (DN 10.)

relevancy grounds: "evidence regarding police conduct in Grant County, which led to the issuance of a warrant for the arrest of another man who happened to be named James Jackson;" "information about any other outstanding warrants for Plaintiff James Jackson on the night of his arrest(s) by Lawson;" and "information about the arrest of plaintiff James Jackson on drug charges in the alley on the night of December 16, 2015[.]" (DN 102 at 2, 12.) Officer Lawson states in his reply that the cross-motion for summary judgment should be struck as untimely, and he argues that the motions in limine are improper at this early stage and otherwise lack merit since the evidence at issue is relevant. (DN 104.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to show that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in

support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

At the outset, the Court will **DENY** Jackson's cross-motion for summary judgment as untimely. By agreed order, the parties set the deadline for dispositive motions at April 30, 2018. Jackson's response, which was stylized as including a cross-motion for summary judgment but only discussed the merits of the cross-motion in one paragraph at the end of the brief, was filed on May 7, 2018, after the deadline for dispositive motions. Therefore, the cross-motion was untimely and will be denied.

Further, the court will **DENY** Jackson's motions in limine. Regardless of the propriety of a motion to exclude evidence on relevancy grounds at the summary judgment stage, the Court finds the evidence at issue to be relevant. As will be discussed, the evidence on how Grant County came to indict and issue a warrant for the arrest of James A. Jackson is relevant to whether Officer Lawson had available exculpatory evidence that would have shown that the plaintiff was being wrongfully detained. *See Gray*, 150 F.3d at 582–83. And the evidence of the existence of other outstanding warrants and Jackson's arrest on December 16, 2015, is relevant to whether Officer Lawson had probable cause to arrest Jackson in the alley behind Garvin Place. Therefore, the motions will be denied.

### A. § 1983 CLAIMS

Jackson has maintained a claim against Officer Lawson for deprivation of liberty without due process based on his arrest and detention under the Grant County warrant. He has also asserted a § 1983 claim for equal protection violations against Officer Lawson, alleging that Officer Lawson presumed that Jackson was the individual sought under the warrant because of

his other outstanding charges. The first claim presents "two potential constitutional violations . . . . mistakenly arresting [the plaintiff] instead of [the correct individual] when executing the arrest warrant . . . [and] mistakenly detaining [the plaintiff] . . . after the arrest." *Seales v. City of Detroit*, --- F. App'x ---, 2018 WL 627106, at *3 (6th Cir. Jan. 31, 2018). Thus, there are actually three theories of constitutional violations that the Court will address in turn.[4]

**1. Unlawful Arrest**

The Court need not consider whether Jackson was unlawfully arrested under the Grant County warrant, as Jackson was not actually arrested under that warrant. Instead, he was arrested because probable cause existed for completely separate drug charges. Officer Lawson responded to a call regarding drug activity. There, he found Jackson sitting on the ground with a syringe and suspected heroin nearby. He then arrested Jackson and took him into custody on separate charges than those that originated from Grant County. Jackson does not contest Officer Lawson's assertion that probable cause existed for his arrest on possession of a controlled substance and drug paraphernalia charges, and he concedes that it was these charges for which he was arrested. (DN 102, at 9) ("After arresting Plaintiff Jackson on an alleged drug charge . . .") It was not until Jackson and Officer Lawson were at the Department of Corrections following the arrest that the Grant County warrant was served. Thus, while this warrant may have been the driving force behind Jackson's continued detention following the resolution of his Jefferson County charges, it had nothing to do with his arrest. Therefore, there is no genuine dispute that

---

[4] Lawson argues that he is both entitled to judgment on the merits and, alternatively, qualified immunity on each of the § 1983 claims. His argument, however, focuses almost completely on whether a constitutional violation occurred and not on whether the right violated was clearly established. The Court will focus its inquiry into whether Jackson can prove a constitutional violation, as that is the central question when both considering the first prong of the qualified immunity analysis and deciding the claim on the merits. *See Flemister v. City of Detroit*, 358 F. App'x 616, 619 n. 4 (6th Cir. 2009) ("Whether the issue [of the plaintiff's ability to establish a constitutional violation] was addressed as the first step of the qualified immunity analysis, or as the dispositive issue on the merits of the § 1983 claim, is immaterial as both ask whether plaintiff has alleged or can prove a constitutional violation").

probable cause existed for arresting Jackson on the drug charges, and Officer Lawson is entitled to summary judgment on any § 1983 claim based on his arrest.

**2. Unlawful Detention**

Next, the Court must consider whether Officer Lawson violated Jackson's due process rights when he detained him under the Grant County warrant following his arrest. The Supreme Court in *Baker v. McCollan*, 443 U.S. 137, 144 (1979), acknowledged that a detainee may have a claim for deprivation of liberty without due process if a valid arrest results in the criminal defendant being detained "in the face of repeated protests of innocence . . . after the lapse of a certain amount of time." The Sixth Circuit established a framework for assessing such claims in *Gray*, stating that the "principal question" is whether the defendant "acted with something akin to deliberate indifference in failing to ascertain that the [individual] they had in custody was not the person wanted[.]" *Gray*, 150 F.3d at 583. "In answering this question, this Court has considered the following factors: (1) the length of time an individual was detained; (2) whether the individual protested his innocence; and, (3) whether any exculpatory evidence was available to officers at the time of arrest or detention." *Seales*, 2018 WL 627106, at *5 (citing *Gray*, 150 F.3d at 582–83). These are "relevant considerations" when determining if, on a motion for summary judgment, a reasonable juror could conclude that the defendant acted with "something akin to deliberate indifference" in the course of detaining the wrong individual.[5] *Id.* at *6.

As for the length of confinement, the relevant date for the beginning of Jackson's confinement under the Grant County warrant would be December 28, 2015, when he was no longer being held on separate Jefferson County charges and would have been released but for the

---

[5] The Sixth Circuit has, however, indicated that these considerations become dispositive when there is no evidence of any protest or available exculpatory evidence. *Thurmond v. Cty. of Wayne*, 447 F. App'x 643, 649 (6th Cir. 2011) ("the uncontested evidence . . . highlights the dispositive fact: Thurmond neither protested his innocence to [the defendants] at any time, nor were any of the deputies in possession of any potentially exculpatory evidence")

Grant County warrant. He allegedly remained detained until February 24, 2016, when he was able to post bond and was placed on house arrest pending the resolution of the felony non-support charges, which occurred on March 15, 2016. This amounts to fifty-nine days of incarceration and another twenty on house arrest, a number that is clearly sufficient to maintain a claim for deprivation of liberty without due process. *See Baker*, 443 U.S. at 144 (three days of incarceration insufficient); *Gray*, 150 F.3d at 582 (forty-one days sufficient).

There is some conflicting evidence on whether Jackson protested his innocence on the Grant County charges. Surprisingly, Jackson testified that he could not remember ever telling Officer Lawson that he did not think the Grant County warrant was issued against him. (Dep. Jackson [DN 98-3] at 69:9–17.) It was Officer Lawson who testified that, upon informing Jackson of the Grant County warrant, Jackson said that he "didn't think it was him." (Dep. Lawson II [DN 102-2] at 3:23.) Taking this evidence in a light most favorable to Jackson, there is evidence of at least one instance of him protesting his innocence and informing Officer Lawson of a possible case of mistaken identity. This evidence is helpful for Jackson, as he could not likely maintain his claim if there was no evidence of protest. *See Thurmond v. Cty. of Wayne*, 447 F. App'x 643, 649 (6th Cir. 2011) ("the uncontested evidence . . . highlights the dispositive fact: Thurmond neither protested his innocence to [the defendants] at any time, nor were any of the deputies in possession of any potentially exculpatory evidence"). But the Supreme Court in *Baker* spoke in terms of indefinite detention "in the face of *repeated* protests of innocence," something that the evidence in this case does not reflect, at least not as to protests made to Officer Lawson. *Baker*, 443 U.S. at 144 (emphasis added).

Finally, the Court must consider whether Officer Lawson had in his possession any exculpatory evidence that would have alerted him to the fact that Jackson was not the person

wanted under the warrant. The only evidence that Officer Lawson had in his possession was the Grant County warrant. There are two pieces of potentially exculpatory evidence in that warrant: the height and the address of the person sought under the warrant. Officer Lawson, who is five feet nine inches tall, testified that he knew that Jackson was taller than him and that he was aware of the discrepancy between the address in the warrant and the address given to him by Jackson earlier. (Dep. Lawson II [DN 102-2] at 7:1–8; 14:3–6.) As such, there was some evidence that Jackson may not be the individual sought under the warrant. However, Officer Lawson also had *inculpatory* evidence in his possession that indicated that he had the right individual. First, Jackson had an identical name to the person sought under the warrant. Second, his date of birth was also identical. Third, Officer Lawson only became aware of the Grant County warrant after conducting a search for active warrants using Jackson's SSN, meaning that the SSN associated with the warrant was the same as Jackson's, even though that number does not appear on the face of the warrant. Thus, Jackson shared three key characteristics, all of which are largely immutable and one of which (his SSN) is unique to him and only him.

Further, if the Court were to consider what evidence was not only in Officer Lawson's possession but also what evidence may have been available to him had he further investigated the Grant County warrant, the record shows that the available evidence would have confirmed that Jackson was the person sought under the warrant. The 2011 support order adjudicating Jackson to be the father of a child in Grant County and ordering him to pay child support includes the same name and SSN that Jackson provided to Officer Lawson. (Support Order [DN 34-2] at 1.) The grand jury referral includes the same name, date of birth, and SSN as Jackson. (Grand Jury Referral [DN 34-3] at 1.) The same goes for the indictment charging him with felony non-support. (Indictment [DN 34-4] at 1.) None of these documents contain exculpatory

information that should have alerted Officer Lawson that the man he was detaining under the warrant was not the man actually sought by Grant County.

Officer Lawson testified that once Jackson told him that he didn't think he was the person sought by Grant County, he "went through [his] steps" to confirm that Jackson was the correct person, although the only specific step he mentioned was verifying that Jackson's date of birth matched the date on the warrant. (Dep. Lawson II [DN 102-2] at 4:4–11.) Thus, with this conduct in mind, the Court must return to the "principal question" of whether a reasonable juror could conclude that Officer Lawson "acted with something akin to deliberate indifference in failing to ascertain that the [individual] they had in custody was not the person wanted[.]" *Gray*, 150 F.3d at 583. The Court concludes that no reasonable juror could find that Officer Lawson acted in such a manner. The evidence in the record shows that, despite the arrest warrant stating that the suspect was six inches shorter than Jackson and resided at a different address, all of the remaining information in the warrant, as well as all of the information possibly available to Officer Lawson, confirmed that Jackson was "the person wanted" by Grant County. No reasonable juror could conclude that Officer Lawson acted with something akin to deliberate indifference by relying on three key characteristics, one of which is unique to Jackson, in confirming that he had the person that Grant County wanted on felony non-support charges.

There are key differences between this case and the cases in which the Sixth Circuit determined that summary judgment was inappropriate in wrongful detention cases based on mistaken identity. In *Gray*, officers had a photograph of the man sought by authorities that "looked nothing like" Gray, along with a physical description that "referred to certain scars that Gray did not have." *Gray*, 150 F.3d at 580. Gray also "continued to protest that he was innocent and that his was a case of mistaken identity," unlike Jackson who appears to have only

mentioned to Officer Lawson once that he didn't believe the warrant was for him. *Id.* And in *Seales*, "significant exculpatory evidence existed and it was in the possession of police," including "photos [that] show two men who look nothing alike." *Seales*, 2018 WL 627106, at *7. Officers also had fingerprint records available for the individual actually sought, and the date of birth listed in the warrant did not match that of the individual in custody. *Id.* The court indicated that a reasonable juror could find the officers liable, as "[i]t appears that the officers failed to confirm Seales' identity, even though simple identification procedures would have revealed the mistake." *Id.* Here, though, Jackson has not shown that any steps taken by Officer Lawson would have revealed the mistake. He possessed no photo of the individual sought, and even if he had investigated the height discrepancy, all of the other evidence that would have been available to him through Grant County indicates that Jackson was the person wanted under the warrant.

Jackson also points to *Webb v. U.S.*, 789 F.3d 647 (2015), a case which involved an officer who testified before the grand jury that he observed Webb purchasing drugs, even though Webb was six inches taller than the man the officer actually observed. Jackson emphasizes that the height difference between the two individuals in *Webb* is identical to the height difference between him and the one listed in the warrant in this case, as well as the court's statement that "[a] law-enforcement defendant is deliberately indifferent – and therefore not entitled to qualified immunity – if he mistakenly identifies an individual as a suspect when the individual does not match the suspect's description." *Webb*, 789 F.3d at 662. But in that case, the only "description" of the suspect was physical; here, the warrant provided a "description" of Jackson that contained one physical descriptor, as well as three personal identifiers that matched with those provided by Jackson. And in *Webb*, there were factual disputes as to the degree to which

Webb resembled the man who actually purchased the drugs. Here, the parties agree that Jackson's height and address on the warrant were wrong, but his name, date of birth, and SSN that alerted Officer Lawson to the warrant were not. Thus, the Court is not convinced that *Webb* created a bright-line rule that officers are deliberately indifferent when they detain someone whose height varies from the one listed by six inches, especially when the other available information indicates that they have detained the correct person.

*Gray* looks to whether the officer should have ascertained that a detainee was not the person wanted, but in this case, Jackson *was* the person wanted, or at least the person Grant County believed it wanted. It was not until the results of the paternity test showing Jackson was not the father in question that Grant County stopped believing that Jackson was the person it sought to hold criminally liable for failing to pay child support. The record is still unclear as to why Jackson became "the person wanted" and had his name and SSN attached to a support order in 2011. But the only claims that remain are those against Officer Lawson, and no reasonable juror could conclude that he was deliberately indifferent to Jackson's claim of innocence when his name, date of birth, and SSN confirmed that Jackson was the person Grant County wanted. Therefore, the Court will grant the motion for summary judgment as to this claim.

**3. Equal Protection**

Finally, Jackson asserts in his complaint that he was denied equal protection of the law by Officer Lawson when he presumed that he must be the person sought under the Grant County warrant because he was already in custody on other charges. Officer Lawson argues that Jackson has failed to articulate a viable theory under which this claim could proceed, as Jackson has not identified a protected class to which he belongs to, and even if the Court were to construe the

claim as one for selective prosecution or enforcement, Jackson cannot prove such a claim. Jackson's response does not mention this claim.

Officer Lawson is entitled to summary judgment on this claim. As Officer Lawson points out, a plaintiff must prove three elements for a selective prosecution claim:

> First, [the state actor] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the *group* which the defendant belongs to.

*Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997) (quotations omitted) (emphasis in original). There is no evidence in the record that Officer Lawson had decided not to take law enforcement action against people outside of custody when they had active warrants, that he acted with a discriminatory purpose towards Jackson, or that his serving the warrant had a discriminatory effect on the larger custodial population. Therefore, Officer Lawson is entitled to summary judgment on this claim.

## B. STATE-LAW FALSE IMPRISONMENT

Finally, Officer Lawson moves for summary judgment on Jackson's claim for false imprisonment under Kentucky law. He argues that, because there was legal authority for the arrest and detention of Jackson, his claim must fail. Jackson has not responded to this argument. "In the case of an action against a law enforcement officer, a claim for false imprisonment is for 'detention without legal authority—that is, detention without legal process.'" *Young v. City of Radcliff*, 561 F. Supp. 2d 767, 794 (W.D. Ky. 2008) (quoting *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007)). However, "a cause of action cannot be maintained when the officer had 'valid or apparently valid' power to arrest." *Smith v. Peyman*, 93 F. Supp. 3d 738, 751 (E.D. Ky. 2015)

(quoting *Rader v. Parks*, 258 S.W.2d 728, 729 (Ky. 1953)).  Thus, "[a] claim of false imprisonment is predicated on the absence of probable cause for the arrest." *Id.* (quoting *Dunn*, 226 S.W.3d at 71).  The Court has already determined that probable cause existed for the arrest of Jackson based on Officer Lawson responding to a report of drug use and finding Jackson with a syringe and suspected heroin nearby.  Further, Jackson has never argued that the Grant County warrant lacked probable cause; he has only argued that Officer Lawson should have realized that he was not the individual sought under the warrant.  The record shows that probable cause existed to arrest Jackson.  Therefore, his claim must fail, and summary judgment is appropriate.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by Defendant Thomas Lawson (DN 98) is **GRANTED**, and the cross-motion for summary judgment and motion in limine by Plaintiff James A. Jackson (DN 102) are **DENIED**.

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 30, 2018

cc: counsel of record